PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* JOSÉ MEDINA-RIVERA, Defendant and Appellant.

No. 2993.   Argued November 8, 1927.—Decided July 24, 1928.

*G. Cruzado Silva* for the appellant.   *José E. Figueras* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

To maintain that a public offense was not charged the appellant insists that the information presented for perjury does not set forth that the statements made by him were material to the cause that had been previously under investigation.

The information says, among other things, that the appellant made a false statement in an investigation being made by the district attorney, "the statement being material to the question which was being investigated." The information did not attempt to set forth the facts from which the materiality of the statement could have been deduced.

From time immemorial there have been two ways to charge the materiality of an alleged false statement. One is by setting forth the facts from which the materiality may be inferred, or else by charging the materiality generally, as in this case. Either method suffices. *People* v. *Ah Bien,* 77 Cal. 12; *People* v. *Ayala,* 13 P.R.R. 195; *People* v. *Ortiz,* 11 P.R.R. 388; 21 R.C.L. 268; 124 A.S.R. 666; 20 Cal. Jur. 1019. In *People* v. *Colón,* 10 P.R.R. 197, cited by appellant, the supposed facts were set forth and did not appear to be material, although expressly so alleged, and hence that case is not an authority for the contention of the appellant.

The appellant also makes some allusion to the supposed difference between sections 117 and 122 of the Penal Code. Under the first section it is perjury to make a knowingly false statement; in the latter to state a fact positively which the person making it did not know to be true. Reading the information, however, it is perfectly clear that the district attorney was proceeding directly under section 117 and charged the defendant with having made a knowingly false statement. In *People* v. *Trujillo,* 24 P.R.R. 120, we were merely suggesting that if the district attorney were doubtful he might present two counts, but we were far from intimating that such a method need generally be followed.

It is well to review the facts. The information set up substantially that José Medina Rivera, the defendant, appeared before the *fiscal* of Arecibo, an officer authorized to take oaths, and at the time of the investigation being had in the case of People v. Julio M. Izquierdo for grand larceny, after taking the regular oath the said defendant, knowing his statements to be false and his statement being material to the prosecution, swore that Julio M. Izquierdo on Sunday, February 28th last past, had told him as follows: ''That he, Julio M. Izquierdo, had the purse that had been stolen from Sebastián Astor; that he was keeping it; that it (*aquello*) was the lottery of Madrid; that there were ten thousand five hundred dollars; that he (Medina) should not worry; that if it came to a showdown all that he (Medina) had to do was to deny and deny; that he (Izquiedro) would get him an attorney,'' it being entirely false that Julio M. Izquierdo had ever made such statement to Medina, etc.

At the trial Eduardo Pérez Casalduc, District Attorney, testified in substance that in the said investigation he had José Medina Rivera before him; that while Medina was sitting there he sent out for the mother of Medina who was also a witness and then a conversation took place between the two witnesses, the mother saying that Julio M. Izquierdo had testified and threw the blame on them for the crime that they

were investigating. After the statement that the mother had testified the defendant (Medina) said that he was going to tell the truth. Then the *fiscal* recited in greater detail the statements alleged in the information to have been made by Medina. Then the *fiscal* said that at the trial against Izquierdo, Medina denied having made the statements, or rather that he (Medina) made them because the said *fiscal* had threatened him with twenty years in the penitentiary. Then the *fiscal* added that Medina swore that the statements formerly made were false.

On cross-examination it was brought out that the mother was made to declare by what was subsequently characterized as a detective ruse. This ruse consisted in a detective calling from afar and pretending to be Izquierdo and telling the mother of the then witness and present defendant that he (Izquierdo) had already declared and that she should tell the truth. On further cross-examination the *fiscal* said that the declaration of the mother was entirely voluntary.

The stenographer of the *fiscal* was called, who reproduced the testimony of Medina at the investigation. The witness testified that the statement of Medina was entirely voluntary. Detective Monteserín was called and testified to some of the foregoing facts and to the detective ruse executed by him. Among other things, he told the mother that Izquierdo had already declared. Then the statements of the present defendant, made at the trial of Izquierdo, were read. Therein he denied that the statements made to the *fiscal* were true.

Then Julio M. Izquierdo took the stand and categorically denied that he had ever made the statement imputed to him by Medina when the latter was originally under examination by the *fiscal*.

Therefore it is evident that the theory of the government in this present case was that Medina swore falsely before the *fiscal* in the investigation made by that officer and the defendant was not entitled to an order of acquittal, as set forth in the first assignment of error.

The second assignment sets up that the evidence shows that the statement made by Medina before the *fiscal* was not voluntary.

While we can see that the defendant might believe himself to have been tricked by the detective, yet his statement before the *fiscal* did not for that reason cease to be voluntary. The ruse was practiced against the defendant's mother and it is remote to suppose that the defendant's statement was not voluntary, once it should be admitted that his statement would have had a voluntary character if the mother had not been induced to declare by the ruse. There was no violence used, or any promise held out to the defendant, or anything done to him that ordinarily destroys the voluntary character of a statement. Likewise, the statement was not a confession but an accusation against another person. This is not the case of a prosecution against Medina by reason of any confession made by him. The third assignment of error covers the same ground and we find no reason for reversing the judgment because of the alleged lack of spontaneity.

To induce a witness by a ruse to make a statement he would otherwise not have made, while perhaps not the ideal way of getting at the truth, is not forbidden by the law in criminal investigations. Furthermore, we think that the court in its instructions gave the defendant a little more than he had a right to expect when he told that the false statements should not be the result of deceit. Even deceit would not justify one fellow citizen in accusing another falsely before the district attorney.

The fourth assignment of error voices our principal doubt. It follows: "The court erred in sentencing the defendant in spite of the insufficiency of the evidence." Of course the assignment should have been that the verdict was against the evidence. We have had considerable question in our minds whether the statements made by the defendant to the *fiscal* were not the true ones. There is quite an improbability that Medina would have made his statements if they were untrue.

What motive could Medina have had to accuse Izquierdo at the suggestion of the latter unless it was true that Izquierdo was guilty? However, the case was submitted to a jury who heard the witnesses and heard Izquierdo. We do not feel justified in saying that the jury had no right to believe that Izquierdo never made the statements to Medina that the latter communicated to the *fiscal*.

Reading the record in this case we have some idea that if the defendant had insisted at the trial that his first statement was true and his second statement false, he might have had the jury agree with him. But as the case was tried we can not say that the jury was not justified in finding that the defendant had made a false statement against Julio M. Izquierdo.

In his fifth assignment the appellant says that the sentence of seven years is excessive. To accuse a man falsely, as here, justifies the court in imposing a severe penalty and we see no reason to interfere with the discretion of the court.

The judgment appealed from must be affirmed.

Mr. Justice Aldrey concurred in part.

Mr. Justice Hutchison dissented.

Mr. Justice Texidor took no part in the decision of this case.