[Crim. No. 6478. In Bank. Aug. 5, 1959.]

THE PEOPLE, Respondent, v. FRANK J. MATULA, JR., Appellant.

Cooper & Nelsen, Grant B. Cooper, Phyllis N. Cooper and Herman F. Selvin for Appellant.

Stanley Mosk, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, William B. McKesson, District Attorney (Los Angeles), Fred Henderson and William E. McGinley, Deputy District Attorneys, for Respondent.

SPENCE, J.—Defendant Matula appeals from the judgment of conviction of perjury (Pen. Code, § 118) and from the order denying his motion for new trial.

In October 1955, Matula was called as a witness at hearings held by the Assembly Interim Committee on Governmental Efficiency and Economy. Matula was secretary-treasurer of Local 396 of the Teamsters' Union, which included many drivers of rubbish trucks and also checkers at rubbish dumps in the Los Angeles area. The committee's questioning of Matula concerned his activities as a union officer and the activities of his union. In particular, many questions dealt with whether Matula had been using the power of his union to aid various rubbish collectors' associations in enforcing association rules that restrained competition among association members. He testified to the effect that no such collusion between his union and the associations existed to his knowledge.

Matula was indicted and convicted for committing perjury in his testimony before the committee. On this appeal, Matula does not challenge the sufficiency of the evidence to show that he wilfully gave false answers but confines his attack to points relating to the materiality of his testimony before the committee.

Penal Code, section 118, defining perjury, expressly requires

that the false statement be of a "material matter." Matula contends that the prosecution failed to prove that his testimony was material to the committee's proper field of inquiry, and that the trial court committed prejudicial error in instructing the jury that his testimony was material.

This appears to be the first case in which this court has been called upon to consider the materiality requirement of the perjury statute in relation to hearings before a legislative investigating committee. (See, however, *Ex parte D. O. McCarthy,* 29 Cal. 395, 401-402.) The rules concerning perjury are ordinarily phrased in terms more meaningful in the usual situation involving a prior judicial proceeding. ■ For instance, it is said that the false testimony must have been material to "the issue" in the prior proceeding. (*People* v. *Bradbury,* 155 Cal. 808, 814-815 [103 P. 215]; *People* v. *Jones,* 123 Cal. 299, 302 [55 P. 992]; *People* v. *Macken,* 32 Cal.App.2d 31, 38-40 [89 P.2d 173]; 38 Cal.Jur.2d, Perjury, §§ 13-15, pp. 379-384.) ■ However, a satisfactory test for materiality of testimony at a legislative hearing is whether the false statements concern a subject properly within the scope of the committee's authority and could reasonably influence the outcome of the proceedings. (See *People* v. *Dunstan,* 59 Cal. App. 574, 584 [211 P. 813]; 38 Cal.Jur.2d, Perjury, § 14, pp. 380-382.)

The parties differ as to what proof of materiality was required under the indictment in the instant case. The indictment is a lengthy document of 18 pages. It recites the Assembly resolution which created the interim committee and authorized it to ascertain, study, and analyze facts relating to state and local government structure and operations, for the purpose of recommending legislative changes increasing the efficiency and effectiveness of the state and local governments.

The indictment further avers that the duly appointed committee, in pursuance of its authority and power, conducted the hearing "to determine if it should recommend to the Assembly of the State of California the enactment of new laws, the repeal of existing laws, or the amendment of the existing laws governing the collection and disposal of rubbish and garbage." There is then an extensive recitation of the questions asked of Matula and of the false answers given by him.

Following the recitation of defendant's testimony, the in-

dictment alleges that the quoted false testimony given by defendant under oath "was material to the issues and hearing then and there pending before said committee in the following particulars: . . . ." The particulars that follow are that the committee had heard from other witnesses that collectors' associations had rules penalizing members who took customers from other members, and that Matula had used his union office to enforce and attempt to enforce those rules by threatening to run violators out of business, to close the union to them, to deny them the use of union dumps, and to picket them.

The indictment then alleges further: "That the above quoted false testimony of the defendant, FRANK J. MATULA, JR., was then and there material to the issues pending at the hearing then and there being conducted by said committee, in that it tended to show that the defendant, FRANK J. MATULA, JR., said Union and its officers, agents, and employees had not enforced and attempted to enforce the rules, regulations, and by-laws of said rubbish collectors' associations mentioned above."

Defendant demurred to the indictment and moved to set it aside, on the ground that the face of the indictment showed that his testimony was not material to the issues before the committee and was beyond the scope of the committee's authorized field of inquiry. The demurrer was overruled and the motion was denied. Defendant then sought a writ of prohibition and the writ was denied (*Matula* v. *Superior Court*, 146 Cal.App.2d 93 [303 P.2d 871]). The court there pointed out that numerous constitutional and statutory provisions relate to the many ways in which cities, counties and special districts are directly or indirectly concerned with rubbish and garbage collection and disposal. The court concluded that an inquiry into the operations of an industry of such vital public concern, and susceptible to so many varied forms of governmental control, was an authorized and proper investigation for a committee on governmental efficiency.

Following the denial of the writ, Matula entered a plea of not guilty and the case proceeded to trial. On the issue of materiality, the prosecution introduced at the trial the committee's authorizing resolution and read from the hearing transcript the chairman's opening statement. That statement recited that the Mayor of Los Angeles had requested the Speaker of the Assembly to assign to a committee the investigation of "all problems surrounding the collection and/or dis-

posal'' of refuse, because the mayor's own investigation had led him to believe there were ''areas of conflict'' reflecting weaknesses in the law. After relating that the Speaker had assigned the investigation to his committee, the chairman described the general purpose of the hearings: ''Is there a situation existing in the collection and disposal of refuse and garbage that contains anything which, in the public interest should be enacted by the State Legislature, by legislation. And if so, should there be legislation enacted into State Laws on that level?''

The prosecution also read into the record, from the hearing transcript, the parts of Matula's testimony relevant to, and including, the parts quoted in the indictment. However, the entire hearing transcript was never introduced into evidence.

The trial court refused defendant's requested instruction that Matula's testimony was not material to the committee's inquiry but, on the contrary, instructed that the testimony was material as a matter of law. After the verdict of guilty, the court denied his motion in arrest of judgment and for a new trial.

On the argument of the motion for a new trial, the trial court remarked that there was no error in the materiality instruction because the court ''has'' judicial notice of the committee hearings. However, no request for taking judicial notice had been made, and no declaration concerning judicial notice had been given to the jury, as provided in section 2102 of the Code of Civil Procedure. It is not clear whether the trial court meant by its remark that it was purporting to take judicial notice at that time or had already done so before the case had been submitted to the jury.

Defendant contends that materiality was never established because the indictment's averments of the contradictory testimony of other witnesses were never proved. He further contends that even if materiality could have been established without proof of the contradictory testimony, it was prejudicial error to instruct the jury to the effect that such materiality had been established.

Respondent contends, however, that materiality was established in any of three ways: (1) Matula's testimony was pleaded and proven to be material to the committee's inquiry whether contradicted or not, and that the averments concerning the contradictory testimony of other witnesses can therefore be treated as surplusage; (2) materiality was established

as a matter of law in the prohibition proceeding (*Matula* v. *Superior Court, supra*, 146 Cal.App.2d 93) under the doctrine of the law of the case; and (3) the transcript of the hearings, including the contradictory testimony of other witnesses, was properly made a subject of judicial notice.

We are of the opinion that the prosecution did not need to prove the testimony of other witnesses, and that the proof of materiality was such that no prejudicial error resulted from the giving of the challenged instruction.

An accusatory pleading of perjury either may simply state that the false testimony was material to the issues in the proceeding in which it was given, or it may aver the facts that establish materiality. (*People* v. *Ah Bean*, 77 Cal. 12 [18 P. 815]; *People* v. *Low Ying*, 20 Cal.App.2d 39 [66 P.2d 211].) As quoted above, the indictment in the present case avers in two places that Matula's testimony "was material to the issues." In the first instance it adds the "particulars" of contradictory testimony of other witnesses, admittedly not proven. However, the second averment grounds materiality on the tendency of the false testimony to show that Matula and the union "had not enforced and attempted to enforce the rules" of the collectors' associations.

Since an accusatory pleading need provide only reasonable notice of the offense charged (Pen. Code, § 902; *People* v. *Beesly*, 119 Cal.App. 82 [6 P.2d 114, 970]), nonessential averments may be disregarded as surplusage (*People* v. *Randazzo*, 48 Cal.2d 484, 489-490 [310 P.2d 413]; see also *United States* v. *Allen*, 131 F.Supp. 323, 326). The pleading in the instant case did not require the prosecution to prove the testimony of other witnesses if materiality could be proven otherwise, and we believe materiality was proven otherwise.

While there have been perjury cases in which the false testimony was said to have been material only because it tended to impeach a witness who did testify to material matters ("circumstantial" materiality) (*People* v. *Lem You*, 97 Cal. 224 [32 P. 11]; *People* v. *Low Ying, supra*, 20 Cal. App.2d 39), this was not the situation with respect to Matula's testimony. His testimony was "directly" material. His version of the union's relationship with the associations was as germane to the committee's inquiry as the contradictory versions of the other witnesses.

As was correctly pointed out in the prohibition proceeding (*Matula* v. *Superior Court, supra*, 146 Cal.App.2d

93, 98-101), there is considerable legislation providing many ways in which the rubbish industry may be affected by the activities of various governmental entities. Furthermore, we cannot ignore the increased public concern with the efficient collection and disposal of rubbish in these days when air pollution problems have led to bans on the burning of rubbish in populous areas. Inquiry into the present workings of the rubbish industry in the most populous area of the state was well within the authority of the committee interested in the effectiveness of existing legislation. Moreover, the subject matter of Matula's false testimony—collusion between the union and the collectors' associations—was material on its face. It could easily influence the outcome of the committee's investigation because of the probable effect of any such collusion upon the price which the public may have to pay, upon the service which the public may receive, and upon the ability of local governmental units to control these matters under existing statutes.

Defendant argues that recent federal cases (e.g., *Scull* v. *Commonwealth of Virginia*, 359 U.S. 344 [79 S.Ct. 838, 3 L.Ed.2d 865]; *Watkins* v. *United States*, 354 U.S. 178 [77 S.Ct. 1173, 1 L.Ed.2d 1273]) establish the proposition that the connection between a committee's authority and the particular question asked must be proven more explicitly than was done in the instant case. These cases involved legislative inquiries into the beliefs and associations of witnesses. They concerned witnesses who refused to answer questions because of an expressed belief that the questions exceeded the committee's power to compel an answer. They hold that under such circumstances, the witness cannot be convicted of contempt unless the question was not only "pertinent," but that the pertinency was explained or otherwise made clear to the witness.

In our opinion, those cases are not controlling in prosecutions for perjury which are based upon the actual giving of false testimony. In contempt cases, the importance of the detailed explanation is to establish the criminal intent of the witness who refuses to answer. (See *Barenblatt* v. *United States*, 360 U.S. 109, 124 [79 S.Ct. 1081, 1091-1092, 3 L.Ed.2d 1115]; *Scull* v. *Commonwealth of Virginia*, *supra*, 359 U.S. 344, 353 [79 S.Ct. 838, 843, 3 L.Ed.2d 865].) But in prosecutions for perjury, criminal intent is sufficiently established if it is shown that the defendant wilfully gave

false testimony. (Pen. Code, § 118.) ■ The proper course for a witness to pursue when he doubts a committee's power to compel an answer to a question is to object to its materiality and demand an explanation. But the witness who chooses instead to give a false answer must risk the subsequent judicial determination of the materiality of the question.

■ We conclude that in the circumstances of this case the giving of the challenged instruction was not prejudicial error. It is frequently said that materiality for perjury purposes is a question of law. (*People* v. *Lem You, supra,* 97 Cal. 227, 228; *People* v. *Sagehorn,* 140 Cal.App.2d 138, 153 [294 P.2d 1062]; *People* v. *Curtis,* 36 Cal.App.2d 306, 319-321 [98 P.2d 228]; anno., 62 A.L.R.2d 1027.) But it has also been indicated that it may be a mixed question of fact and law: that the jury's function is to find what happened at the prior proceeding and the court's function is to instruct the jury as to what findings would establish materiality. (*People* v. *Lem You, supra,* 97 Cal.224, 228-230; *Luse* v. *United States,* 49 F.2d 241, 244-245.) But even assuming that the jury should have been permitted to determine what happened at the legislative hearings, the most that can be said is that the jury was deprived of the opportunity of determining whether the portions of the hearing transcript that were made part of the record in this case were accurate.

However, the jury was given no reason to doubt the accuracy of the transcript. On the contrary, when the prosecuting attorney was reading portions of the transcript into the record, defense counsel, who had a copy of his own, corrected some of the prosecuting attorney's reading errors. But the defense at no time challenged the accuracy of the transcript. ■ The certified transcript of a prior judicial proceeding is prima facie evidence of the testimony and proceedings it recites. (Code Civ. Proc., § 273.) No such express statutory presumption applies to transcripts of legislative committee hearings; ■ but in any event, there is no reasonable probability that the jury would have reached a different verdict had the materiality instruction required them to find first that the transcript accurately reflected the committee proceedings. We therefore conclude that the giving of the challenged instruction was not prejudicial. (Cal. Const., art. VI, § 4½; *People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243].)

In view of the above conclusions, it is unnecessary to decide whether materiality was established through judicial notice of

the contradictory testimony or under the doctrine of the law of the case.

The judgment and order denying a new trial are affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., and Peters, J., concurred.